Approved: _____
MATTHEW WEINBERG
Assistant United States Attorney

Before:    HONORABLE ONA T. WANG
           United States Magistrate Judge
           Southern District of New York

------------------------------------- X
                                      :    **21 MAG 11037**
UNITED STATES OF AMERICA              :
                                      :    SEALED COMPLAINT
                                      :
                                      :    Violations of 18 U.S.C.
           -v.-                       :    §§ 922(a)(1)(A), 922(g),
                                      :    924(a), and 2.
JOSEPH ATKINSON,                      :
     a/k/a "Justi,"                   :    COUNTY OF OFFENSE:
                                      :    BRONX
                                      :
                Defendant.            :
------------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    TATIANA-MARIA BIESS, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and charges as follows:

### COUNT ONE
(Firearms Trafficking)

    1.  From at least on or about August 5, 2021 until at least on or about September 9, 2021, in the Southern District of New York and elsewhere, JOSEPH ATKINSON, a/k/a "Justi," the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business shipped, transported, and received firearms, to wit, ATKINSON illegally sold three firearms to an undercover officer in the Bronx, New York.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1), and 2.)

## COUNT TWO
(Felon in Possession)

2. On or about August 5, 2021, in the Southern District of New York and elsewhere, JOSEPH ATKINSON, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess ammunition, to wit, eight rounds of 9 millimeter Luger ammunition, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am a Special Agent with the ATF, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement agents, my review of video and audio recordings, and my examination of various reports, records, and other evidence. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview of the Offense and Ghost Guns

4. Based on my training and experience, I know the following:

    a. Pursuant to the Gun Control Act, all firearms manufactured or imported into the United States since October 22, 1968 must bear an identifying serial number.

    b. One increasingly common way in which individuals who wish to possess untraceable firearms evade this requirement is through the use of what are colloquially known as "ghost guns," or privately made firearms.

    c. Individuals can purchase kits containing the tools and component parts necessary to assemble or "machine"

firearms.[1]  For example, individuals may purchase an "80 Percent Pistol" or "AR-15 Receiver."  A receiver is the basic unit of a firearm which houses the firing mechanism, the breech mechanism, and the hammer, and to which the barrel is assembled.  The 80 Percent Pistol or AR-15 Receiver (often referred to as "80%" or "80% finished" or "80% complete" in industry parlance) is an unfinished firearm receiver that is advertised as being 80 percent complete and may not be a firearm as the term is defined in 18 U.S.C. § 921(a)(3), but which can be easily further finished and assembled into a firearm receiver, and a fully functional firearm.

    5.    Based on my participation in this investigation, I have learned that, on at least three separate occasions between August 5, 2021 and September 9, 2021, JOSEPH ATKINSON, a/k/a "Justi," the defendant, sold a ghost gun to an undercover officer ("UC-1").  That is to say, ATKINSON sold a firearm which had been constructed in a manner consistent with paragraph 4.c, *supra*, and which did not have a serial number.  On one occasion, ATKINSON also sold eight rounds of 9 millimeter Luger ammunition.  ATKINSON did so following a felony larceny conviction for which he was sentenced to 18 months' to three years' imprisonment.

    6.    Based on my communications with other law enforcement agents, my review of audio and video recordings of UC-1's purchase of firearms from JOSEPH ATKINSON, a/k/a "Justi," the defendant, my conversations with UC-1, and my review of various reports, records, and other evidence, I know the following:

August 5, 2021 Transaction

        a.    On August 5, 2021, ATKINSON contacted UC-1 by phone and informed him that he had a pistol available for sale for $1,500.

        b.    Following additional discussions, ATKINSON and UC-1 agreed to meet at a location in the vicinity of 164th Street and College Avenue in the Bronx at approximately 2:00 p.m. that day.

        c.    At approximately 2:20 p.m., ATKINSON and UC-1 met in the vicinity of 164th Street and Morris Avenue in the Bronx.  The meeting took place inside of UC-1's car.  At that meeting, ATKINSON provided to UC-1 one clear plastic container containing

---

[1] Machining is the process of cutting, shaping, or removing material from a workpiece using a machine tool.

a Polymer80 Inc., 9 millimeter semi-automatic ghost gun with no serial number.  ATKINSON also provided to UC-1 eight rounds of 9 millimeter ammunition, a weapon-mounted light with a red laser beam, and a wall charger for that light.  In exchange, UC-1 provided ATKINSON with $1,500 in cash.

       d.   At this meeting, ATKINSON told UC-1 that he had additional firearms for sale, including AK-47s.

### August 23, 2021 Transaction

       e.   On or about August 16, 2021, UC-1 contacted ATKINSON to arrange the purchase of another firearm.  ATKINSON told UC-1 to "give me this week" and to call again on Friday, that is, August 20, 2021.  After UC-1 requested a "small" firearm, ATKINSON said, "I got you."

       f.   UC-1 called ATKINSON on Friday, August 20, 2021.  ATKINSON reported to UC-1 that he had a "brand new seventeen shot, 9 millimeter handgun."  ATKINSON told UC-1 that he "wanted the same for it," that is, $1,500, as had been the price in connection with the August 5, 2021 transaction.

       g.   UC-1 asked ATKINSON if they could arrange the transaction for Monday, August 23, 2021.  ATKINSON told UC-1 that the firearm "might be gone by then," adding that "you know I be popping these like crazy" and "mad people get from me."  Based on my training and experience, I understand ATKINSON to be saying that he sells firearms to other individuals as well, and therefore could not promise that he would still have the seventeen shot, 9 millimeter handgun available to sell to UC-1 on Monday.

       h.   On Sunday, August 22, 2021, UC-1 confirmed with ATKINSON that the firearm was still available.  ATKINSON confirmed, and UC-1 and ATKINSON agreed to meet on August 23, 2021 between approximately 1:00 p.m. to 2:00 p.m.

       i.   On Monday, August 23, 2021, UC-1 and ATKINSON had numerous conversations by phone in order to arrange the transaction.  At approximately 1:30 p.m., ATKINSON and UC-1 met in the vicinity of 286 East 164th Street in the Bronx.  ATKINSON entered UC-1's car and sat in the front passenger seat.  ATKINSON then provided to UC-1 one black plastic bag containing a Polymer80 Inc. 9 millimeter semi-automatic ghost gun with no serial number.  In exchange, UC-1 provided ATKINSON with $1,500 in cash.

        j.    At this meeting, ATKINSON and UC-1 discussed future firearms transactions.  Later that day, ATKINSON and UC-1 had a telephone conversation in which ATKINSON asked UC-1 how many more firearms he was interested in buying.  UC-1 said that he wanted one more firearm.  ATKINSON stated, in sum and substance, that his source for firearms would be receiving additional weapons, and that he would be able to sell another firearm to UC-1.

<u>September 9, 2021 Transaction</u>

        k.    Between on or about August 23, 2021 and August 31, 2021, UC-1 and ATKINSON had numerous telephone conversations regarding firearms transactions.

        l.    Thereafter, on September 8, 2021, UC-1 contacted ATKINSON by phone and inquired about purchasing a firearm.  Eventually, after additional telephone calls, UC-1 and ATKINSON agreed to a firearms transaction whereby ATKINSON agreed to sell UC-1 another firearm in exchange for $1,300.  UC-1 and ATKINSON agreed to meet on September 9, 2021, between 12:00 p.m. and 1:00 p.m.

        m.    At approximately 1:45 p.m., ATKINSON and UC-1 met inside of UC-1's car in the vicinity of 286 East 164th Street in the Bronx.  ATKINSON entered UC-1's car and sat in the front passenger seat.  ATKINSON then provided UC-1 a Polymer80 Inc., 9 millimeter semi-automatic ghost gun with no serial number.  UC-1 provided ATKINSON with $1,300 in cash.

        n.    At this meeting, ATKINSON and UC-1 discussed future firearms transactions.

    7.    Based on communications with a nexus expert from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms and ammunition, I have learned that the eight rounds of 9 millimeter Luger ammunition provided by JOSEPH ATKINSON, a/k/a "Justi," the defendant, to UC-1, on August 5, 2021, were not manufactured in New York State.

    8.    Based on my review of criminal history records pertaining to JOSEPH ATKINSON, a/k/a "Justi," the defendant, I have learned that, on or about March 26, 1997, ATKINSON pleaded guilty in Kings County Supreme Court to grand larceny in the fourth degree, in violation of New York Penal Law 155.30(5), a Class E felony.  ATKINSON was sentenced to 18 months' to 3 years' imprisonment.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JOSEPH ATKINSON, a/k/a "Justi," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

                                                      S/ Tatiana-Maria Biess /otw
                                                     SPECIAL AGENT TATIANA MARIA-BIESS
                                                     ATF

Sworn to me through the transmission of this Affidavit by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1 this 17th day of November, 2021

_____
THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6